UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

                          Case No. 2:17-cr-00201-PP

    v.


DAVID E. POLNITZ JR.,

        Defendant.

---

**SENTENCING MEMORANDUM**

---

David Polnitz is a violent felon who was recently convicted of another violent felony at trial before this Court. He did not accept responsibility for what he did and instead tried to convince a jury his victim was a liar. He is a danger to his community and this Court should sentence him to 66 months in prison—a sentence that is within his guideline range and six months longer than his previous prison sentence.

A. **Nature and Circumstances of the Offense**

The seriousness of this offense can only be appreciated by considering the context of firearm violence in Milwaukee. In 2017, there were 677 victims of homicides and non-fatal shootings in the City of Milwaukee. The Milwaukee Homicide Review Commission ("MHRC") found that the number of firearm-related homicide and nonfatal shooting victims in Milwaukee had remained under 500 from 2008-2010. *See* Milwaukee Homicide

Review Commission, 2016 *Annual Report: Homicides and Nonfatal Shootings in Milwaukee* (Sept. 2017). The number of such victims began increasing in 2011 and has since remained above 600 victims (reaching above 700 in 2015). MHRC's research shows that the most common known factor in these shootings is an argument or fight, even more than drug trafficking or other causes. *Id.* at 23 (showing "Argument/Fight" to be most common Primary Factor in 2014-2015 data).

The sad fact is that individuals like Polnitz, who use firearms to escalate normal, everyday disagreements are the primary driver of violence in Milwaukee. They must be deterred because using a firearm to settle ordinary disputes is devastating to a neighborhood. Individuals like Polnitz endanger their neighbors through the threat of stray bullets and through the trauma every adult and child in the neighborhood experiences from the threat of everyday ambient violence. For that reason, fewer people want to live in the neighborhood, which drives down property values and hurts schools. Children do not feel safe playing outside. Businesses do not want to locate there (or even deliver there) because if there is a dispute with a customer, it might turn deadly. Polnitz, and his use of a firearm, helps perpetuate a downward spiral of violence and poverty.

Indeed, the purpose of felon-in-possession laws is to prohibit people like Polnitz, who have been convicted of a particular type of felony offense, from owning a gun because they are more likely to use firearms to settle mundane disagreements. If Polnitz did not possess a firearm, perhaps he would only have had a heated argument with the mail carrier—precisely the one he pretended at trial had happened—instead of a potentially deadly encounter.

2

In other words, the point of prohibiting felons from carrying firearms is to break the cycle of violence. This is why Polnitz's disregard for the prohibition on possessing a firearm is so serious. But this case is much more serious than a typical felon in possession case. It is at the extreme aggravated end of the spectrum. Oftentimes, felon-in-possession cases involve an individual passively possessing a firearm in his car. That is not this case. Here, Polnitz affirmatively used a loaded firearm to threaten to murder a mail carrier who was trying to do his job.

Unlike other felon-in-possession cases, Polnitz's offense had a discrete victim: United States Letter Carrier Kevin Phillips. Kevin Phillips was just trying to do his job until Polnitz pointed a loaded firearm at him. This type of workplace violence has had a lasting impact on Phillips.

Phillips' life was again disrupted when, in order for the jury to learn the facts of the case, Phillips was subpoenaed to testify in federal court. Phillips accurately summarized his situation at trial:

> Q.     Mr. Phillips, do you want to be here today?
> A.     I sure do not.
> Q.     Did you want to testify today?
> A.     I sure did not.
> Q.     Do you feel more safe having testified here today?
> A.     I sure do not.

Trial Transcript 1, at 79.

Not only did Phillips have to testify against his will, but he was also called a liar in open court. Polnitz could have argued that Phillips was simply mistaken and that Polnitz threatened him with a water gun. Instead, Polnitz took advantage of the fact that

3

his initial statement to police was suppressed in order to walk right up to the line of misleading the jury by accusing Phillips of fabricating an incident involving any type of "gun."

In summary, Polnitz threatened to kill a man who was just trying to do his job on a weekday afternoon, then, when that man was subpoenaed to testify, Polnitz called him a liar. This case is extremely aggravated, and it has a real victim.

**B. History and Characteristics of the Defendant**

Polnitz has an aged, but violent criminal history. *See* PSR ¶ 36. In 1996, Polnitz and two other people randomly approached a person and asked him a question. Sensing danger, that individual ran and Polnitz's fellow robber shot the victim. According to the PSR, "Polnitz stated he had been playing cards and drinking with the codefendant earlier in the day (the shooting occurred at 11:15 a.m.) and they had talked about robbing someone." *Id.*

One might imagine that would put Polnitz off of violent robberies for good. But it did not. In 2000, Polnitz used a firearm to violently rob a woman who was leaving a check-cashing business. The PSR describes the incident:

> The victim observed a maroon Pontiac approach her and her mother. Two occupants of the vehicle, both males wearing camouflaged ski masks and both carrying handguns, got out of the car.
>
> One of the men grabbed the victim by wrapping his left arm around her chest and pinning her arms to her body. He then reached into her coat and pants pockets. The victim struggled, but the assailant was able to obtain all the paper money from her coat pocket as well as the roll of quarters. The assailant then pointed the gun at the victim and demanded "Give me more money." The victim denied having any additional money. She was able to break free from the assailant and began to struggle with him. The victim

4

was struck and fell to the ground. She was then struck on the back of the head with the gun.

When the victim started to get up, she observed the second robber, was holding a gun to her mother's head. The victim shouted, "Get the gun out of my mama's face." The second robber, later identified as David Polnitz, then struck the victim several times with his gun, knocking her to the ground. The victim stated at one point, Mr. Polnitz dropped his gun and she was able to knock it away, but he retrieved the gun and struck her again before fleeing in the maroon vehicle.

Mr. Polnitz was arrested on March 3, 2000 and gave several statements to the police, including an alibi that turned out to be false.

PSR ¶ 37 (paragraph spacing added). To summarize, Polnitz threatened to murder a woman's mother, in front of her. He then viciously beat the woman with a gun.

Polnitz received 60 months in prison for this offense and obviously was not deterred from violently using a firearm once again. It has been quite a while since he was released from prison. He has undertaken responsibility for the care of children in his family. And he has a job. Those are good things. Although it has been quite a while, he has once again taken up a loaded gun and threatened to murder an innocent person.

This is a particularly aggravated felon-in-possession crime. A within-guidelines sentence is necessary to achieve the purposes of sentencing.

Respectfully submitted this 11th day of April 2019 at Milwaukee, Wisconsin.

MATTHEW KRUEGER
United States Attorney

By: /s/ *Zachary J. Corey*

ZACHARY COREY
Assistant United States Attorney

5

zachary.corey@usdoj.gov

BENJAMIN TAIBLESON
Assistant United States Attorney
benjamin.taibleson@usdoj.gov

Attorneys for Plaintiff
United States Attorney's Office
Eastern District of Wisconsin
517 East Wisconsin Avenue, Room 530
Milwaukee, Wisconsin 53202
Telephone: (414) 297-1700

6