UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                      Case No. 17-cr-201-pp

DAVID E. POLNITZ JR.,

    Defendant.

**ORDER DENYING MOTION FOR A NEW TRIAL (DKT. NO. 79)**

## I.    INTRODUCTION

On November 27, 2018, after a two-day trial, a jury found the defendant guilty on both counts of the indictment—being a felon in possession of a firearm and assaulting a United States Postal Worker. Dkt. No. 70. The defendant timely filed a motion for new trial. Dkt. No. 79. The motion asserts that the court improperly characterized (and excluded) certain evidence as alibi evidence. The motion also contends that if the court correctly excluded the evidence, the defendant is entitled to a new trial because he received ineffective assistance of counsel. The court will deny the motion.

## II.    BACKGROUND

On November 21, 2017, the grand jury returned a two-count indictment charging the defendant with one count of being a felon in possession of a firearm and one count of assaulting a United States postal worker. Dkt. No. 1.

The defendant filed two motions—a motion to suppress statements and a motion to suppress physical evidence. Dkt. Nos. 9, 10.

On April 26, 2018, Magistrate Judge Duffin issued a report, recommending that this court deny in part and grant in part the motion to suppress statements, and that it deny the motion to suppress physical evidence. Dkt. No. 24. Both the government and the defendant objected. Dkt. Nos. 25, 28. On July 19, 2018, this court adopted Judge Duffin's report and recommendation in part. Dkt. No. 31. It granted the motion to suppress statements to the extent that the motion asked the court to suppress the statements the defendant made on the walk to the squad car and in the squad car. Id. The court denied that motion to the extent that it asked the court to suppress statements made during the pat-down of the defendant's porch. Id. The court denied the motion to suppress physical evidence. Id.

Prior to trial, the parties filed a joint final pretrial report with accompanying motions *in limine*. Dkt. Nos. 41-43. One of the government's motions *in limine* asked the court to preclude the defendant from presenting alibi evidence. Dkt. No. 42 at 3. The motion stated:

> To date, [the defendant] has not provided a notice of alibi pursuant to Fed. R. Crim. Pro. 12.1. The United States requests advance notice from [the defendant] of any alibi. In the absence of such notice, the United States requests the Court preclude testimony in support of an alibi for any of the charged crimes.

Id. At the November 8, 2018 final pretrial conference, the court denied the defendant's motion *in limine* and—without objection from defense counsel—granted the government's motions *in limine*. Dkt. No. 50.

2

Trial began on November 26, 2018. Dkt. No. 76. As the government noted in its response to the new trial motion, the evidence indicated that while postal worker Kevin Phillips was making his rounds on June 27, 2017, the defendant's pitbull ran toward him, and the postal worker sprayed the dog with dog spray. Dkt. No. 82 at 2. The defendant's wife learned of this, and contacted the defendant, who was at work at the Salvation Army about a mile away. Id. The defendant drove his employer's white Dodge Caravan from his job toward his home, and on the way, encountered the postal worker. Id. The defendant (in the van) asked the postal worker (on foot) why the postal worker had sprayed his dog; the postal worker responded, and the defendant said he would be back. Id. The defendant then went to his home, went inside, came out and came toward the postal worker, yelling at him. Id. at 3. When the postal worker asked the defendant if the defendant was threatening him, the defendant responded, "no, this is a threat," and pulled out a gun, pointing it at the postal worker. Id. The defendant then went back to his home. As it turned out, the defendant was a prohibited person who could not possess a gun. Id.

The postal worker testified on cross examination that the "confrontation" happened "[a]bout 5 o'clock in the afternoon, the evening," and that he was "positive" about the time. Dkt. No. 76 at p. 56, lines 17-22. He also testified that his supervisor called 911 after the incident. Id. at p. 57, lines 3-6. The government presented evidence that the postal worker's supervisor called 911 at 4:19 p.m. Id. at p. 94 at lines 24-25; 95 at lines 10-11, 22.

When the government rested its case, the defendant made an oral motion for acquittal under Fed. R. Crim. P. 29. Id. at 138. The court denied that motion. Id. The government then alerted the court that it had not received any notice of an alibi witness from the defendant and it renewed its motion to preclude alibi evidence; the defendant responded that he wouldn't be presenting any alibi witnesses. Id. at 139.

The next, day, during the defense's case in chief, defense counsel called the defendant's wife, Lorenzya Polnitz. Dkt. No. 77 at p. 28. She testified that the mail "usually came" in the late afternoon, "around 2:00 or 3:00." Id. at p. 31, lines 17-19. She confirmed that the defendant came home after she called to report that the postal worker had sprayed the dog, then left the house. Id. at p. 32, lines 2-25; p. 33, lines 1-23. At that point, defense counsel began asking Ms. Polnitz about what the defendant did after his encounter with victim postal worker Kevin Phillips. Id. at p. 33, lines 12-25; p. 34, lines 1-12. The government objected to this line of questioning and, after dismissing the jury, the court heard argument from the parties. Id. at p. 35, lines 20-25; pp. 36-39. Defense counsel argued that he should be allowed to introduce a timesheet from the Salvation Army which showed when the defendant clocked into and out of his job at the Salvation Army. Id. at p. 36. Counsel argued that the time sheet was relevant the question of timing, asserting that it undermined the victim postal worker's recollection of when the encounter with the defendant occurred. Id. The court first reiterated that, as it had told defense counsel at sidebar, the defendant's wife was not the appropriate witness through which to

introduce a business record from the Salvation Army. Id. at p. 36, lines 18-25. The court's bigger concern was that, despite arguing that he did not plan to present an alibi defense, defense counsel appeared to want to use the timesheet to show that the defendant could not have "been the one who pulled the gun because he was somewhere else . . . ." Id. at p. 37, lines 1-7. Defense counsel said that the timesheet wasn't

> reflective of whether or not [the] encounter happened. If an encounter happened, it's indicative of when things were going on. It gives the jury a sense of who was where at what time and not to show that [the defendant] was somewhere else when this event happened, but just to show that, you know, there's a confusing set of circumstances here with the alleged victim's ability to recall a time. And this just kind of sets some concrete things as to at least when [the defendant] left work for the day, what time that was.

Id. at p. 37, lines 12-21. After hearing brief argument from the government, the court concluded that the defendant now was trying to present an alibi defense for which he had not given notice; the court concluded that it had ruled twice on the issue, and that it was not going to allow the defense to question the defendant's wife about the Salvation Army timesheet. Id. at p. 38, lines 11-13. Defense counsel nonetheless stated,

> Judge, I guess I just want to for the record make one thing, one more point; that is, that the victim says that this happened. His testimony was this happened at about 5:00 p.m. He's certain of that. The fact that [the defendant] left work for the day at 4:28 is not an alibi, doesn't provide an alibi as to when, you know, that he was somewhere else when this crime happened.

Id. at p. 38, lines 14-20. The court responded:

> What you're saying it could impeach [the postal worker's] recollection as to timing. You can also do that. You've already asked Ms. Polnitz from her own recollection a couple of questions about what she recalls in terms of when her husband came home, how

5

> long it took him to get there, and when he left. That is going to have to suffice. I understand it can also be used for impeachment.
>
> Again, she's not the right witness to do it through and in this instance showing who was where and when I agree with the Government is an alibi where there was no notice given, so that will be my ruling.

Id. at p. 38, lines 21-25; p. 39, lines 1-6.

At the close of trial, the defendant renewed his oral motion for acquittal under Rule 29. Id. at 91. The court denied the motion and the jury found the defendant guilty on both counts. Dkt. No. 77 at 93.

### III. ANALYSIS

#### A. Standard of Review

The defendant filed the motion for a new trial under Fed. R. Crim. P. 33(a). That rule provides that, on "the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." Fed. R. Crim. P. 33(a). When considering a Rule 33 motion, the court does not have to view the evidence in the light most favorable to the government. United States v. Van Eyl, 468 F.3d 428, 436 (7th Cir. 2006). The court may independently consider witness credibility. United States v. Sanders, 690 Fed. Appx. 424 (7th Cir. 2017). The court must grant the motion where the evidence "preponderates heavily against the verdict, such that it would be a miscarriage of justice to let the verdict stand." United States v. Washington, 184 F.3d 653, 657 (7th Cir. 1999); see also United States v. Chambers, 642 F.3d 588, 592 (7th Cir. 2011). A court should not lightly grant a Rule 33 motion. United States v. Santos, 20 F.3d 280, 285 (7th Cir. 1994).

6

The instant motion has two prongs. First, the defendant argues that the evidence he sought to introduce was not "alibi" evidence. Second, he argues that if it *was* alibi evidence, defense counsel was ineffective because he failed to take the necessary steps to admit it.

B.  Alibi Evidence

1.  *The Parties' Arguments*

The defendant first argues that the court should not have excluded the Salvation Army timesheet because the government did not comply with Fed. R. Crim. P. 12.1. Dkt. No. 79 at 3. He says that the government's motion *in limine* did not qualify as a "request" under Rule 12.1—it did not state the date, time or place the offense was alleged to have happened. Id. at 4 (citing United States v. Saa, 859 F.2d 1067, 1071 (2d Cir. 1988). He asserts that the discovery materials never identified the specific time when the offense occurred and that postal worker Kevin Phillips "was unable to say when the encounter with [the defendant] transpired." Id. The defendant asserts that absent a proper Rule 12.1 request from the government, he should not have been punished for his belief that the timesheet did not constitute alibi evidence. Id. at 5.

Next, the defendant argues that he never advocated for an alibi defense— he was *not* arguing that the encounter with the postal worker never happened. He contends that the timesheet would have served only to challenge Kevin Phillips' characterization of the timing of the encounter. Id. at 5. The motion stated that the defendant "conceded that he was present at the scene of what the government alleged was a crime and that he had a confrontation with

7

Phillips." Id. The defendant contends the timesheet would have bolstered the idea that postal worker Phillips "went hours before saying anything about the encounter to anyone," thus undermining Phillips' allegations that the defendant threatened him with a gun. Id. at 7. Finally, the defendant argues that the purpose of Rule 12.1 is to prevent surprise at trial and that there were no surprises here; the defendant had provided the timesheet in discovery and had included the timesheet on the exhibit list a week before trial. Id.

The government responds that the indictment and the discovery made clear the date, time and place of the alleged offense. Dkt. No. 82 at 4. It says that these disclosures were sufficient to trigger the defendant's obligations to provide notice of an alibi defense. Id. (citing United States v. Benavidez, 992 F.2d 1220 (9th Cir. 1993)). The government asserts that the defendant waived his ability to argue that the Rule 12.1 request was defective by consistently telling the court that he did not intend to present alibi evidence. Id. at 5. Next, the government argues that the timesheet constituted alibi evidence. It asserts that the defendant framed his defense in this way: "the victim was lying and, accordingly, the second confrontation, during which [the defendant] pulled a gun on Mr. Phillips, did not happen." Id. at 6-7. The government points to the defendant's opening statement, his statements to the court at the end of the first day of trial and his questioning of witness Kevin Higgins as instances in which the defendant appeared to argue, or imply, that an encounter between the defendant and postal worker Phillips did not happen. Id. Given these arguments, the government contends that the defendant offered the time

8

sheet—which showed that the defendant was at work from 8:45 a.m. to 4:28 p.m.—as evidence that the second encounter could not have happened. Id. at 8.

But, the government says, even if the court improperly excluded the evidence, the error did not prejudice the defendant. Id. It argues that the timesheet was of little evidentiary value; "It is not clear how the fact that Mr. Polnitz went to work for a few hours after the incident and then left work at 4:28 adds anything to this theory of the case." Id. at 9-10. The government also observes that the court did not preclude the defendant from arguing that postal worker Kevin Phillips got the timing wrong in closing argument. Id. at 10.

2. *Discussion*

"The usual alibi evidence, if believed, proves that it was physically impossible for the defendant to have committed the crime that he's been accused of[.]" United States v. Ford, 683 F.3d 761, 764 (7th Cir. 2012). The Federal Rules of Criminal Procedure provide procedures in cases involving alibis, to allow the prosecution the opportunity to investigate the proposed alibi in advance of trial. Id. Rule 12.1(a)(1) provides that the government "may request in writing that the defendant notify an attorney for the government of any intended alibi defense. The request must state the time, date, and place of the alleged offense."

The parties dispute whether the government followed the proper procedure under Rule 12.1. The government filed a motion *in limine* on November 1, 2018 which notified the court that it had not received notice of an

9

alibi, requested advance notice of any alibi and asked the court to exclude evidence of an alibi in the absence of such notice. Dkt. No. 42 at 3. The government admits that the motion did not contain the time, date and place of the alleged offense. But at the final pretrial conference, the defendant did not object to the sufficiency of the motion despite the court's indication that it would grant the motion to preclude testimony regarding an alibi if the defendant had not given notice. Dkt. No. 50. Moreover, after the first day of trial, the following exchange occurred:

> THE COURT: I think – I was going to say [previously], I did rule saying that unless the defense provided notice of an alibi, that I would grant that motion. I don't have one either, Mr. Uller.
>
> MR. ULLER: No. Your Honor, I think the defense's theory of the case is pretty clear at this point. It's not that my client was somewhere else when this crime happened, it's that the crime didn't happen. And –
>
> THE COURT: Okay. During your opening statement, you made comments about [the defendant] being at work. And then you got into discussing the encounter. So I'm trying to delineate between those. The alibi would, obviously, be he couldn't have done it because he was at work.
>
> Mr. ULLER: Right. That's, clearly, not the case. The work – And, obviously, we haven't gotten to the defense case yet. The defense isn't going to be presenting any alibi witness.

Dkt. No. 76 at p. 139, lines 16-25; p.140, lines 1-7. The record confirms that the defendant did not raise the sufficiency of the government's notice until after the trial. The defendant has waived this argument.

With regard to the court's ruling prohibiting the defendant from questioning Ms. Polnitz about the time sheet: The defendant made equivocal

statements during opening argument which blurred the line between a valid defense and an unnoticed alibi defense. For example, counsel stated:

> By waiting for over three to four hours to get to the scene of this incident, this argument, police didn't speak to a single witness. Confrontation happened in broad daylight in the middle of a street in a busy residential area. The question for you in this trial is going to be whether that second encounter ever happened.
>
> We will present evidence to you to show you that it did not happen. You will hear from a neighbor, one of the neighbors that the police didn't take the time to look into and talk to. His name is Kevin Higgins. He will tell you he doesn't know [the defendant], didn't know [the defendant] back then, but he was out walking his dog when he observed [the defendant] and the mailman arguing, and he'll say this was an animated, heated argument on both sides. Foul language was used, some F-bombs were dropped, but then [the defendant] walked away and it was over. He'll tell you he was there. He never saw [the defendant] pull the gun. He never saw him come back to the area at a later point and continue the argument or reengage with [the defendant]. He'll tell you the incident described just didn't happen.
>
> You'll also he[ar] from [the defendant's] wife, Lorenzya Polnitz. She'll tell you what happened when her husband, [the defendant], came home. She'll tell you how calm things were. She'll tell you the baby was asleep, that the dog was fine, that [the defendant] was calm, calm enough to leave and go back to work.
>
> The scene Ms. Polnitz describes is going to stand in stark contrast to this one of raging anger that the Government wants you to believe. This isn't a complicated case. It's not a who done it. The question is, whether the crime alleged ever happened.

Dkt. No. 76 at p. 41, lines 19-25; p. 42, lines 1-22.

Twice in that portion of the argument, defense counsel stated that the crime did not happen. Twice he framed jury's task as a decision about whether the incident happened. Earlier in his argument, when he presented the defense version of the facts, defense counsel recounted that the defendant got a call from his wife, that he went home and encountered the postal worker on the

11

way, that he argued with the postal worker, that he went home and checked on the situation, and that he went back to work. Id. at p. 40, lines 5-20. The opening statement focused on a single defense—that the crime did not occur.

At the same time, defense counsel hinted that the crime could not have happened because the defendant was not there at the time of the alleged second encounter. He stated that after arguing with the postal worker, the defendant went home and, "[s]eeing everything was fine, [the defendant] left and went back to work until he left for the day at about 4:28 p.m." Id. at p. 40, lines 15-19. He went on to talk about the fact that the 911 call came in at 4:20 p.m. Id. at lines 21-24. This implication—that during the time the postal worker claimed the defendant had been pointing a gun at him, the defendant had been at work—hinted at an alibi defense. Was the defendant arguing that there was an incident, but that it didn't involve a gun? Or was he arguing that the postal worker made up the incident, and that the defendant could not have even had the second encounter with the postal worker because the defendant was at work at the time?

The court noted this blurring of defenses at trial. When the defendant began asking Lorenzya Polnitz if she knew about the defendant's work at the Salvation Army, the court called both a sidebar and a recess, at which the parties had an in-depth substantive discussion about this proposed evidence. Dkt. No. 77 at p. 33. After argument, the court remarked that:

> But the bigger issue to me is that the government has expressed concerns that there's never been alibi notice; that there's never been a proposed alibi defense, and that this seems to be blending into a thin line between these events didn't happen, which is a valid

> defense, and saying he couldn't have been the one who pulled the gun because he was somewhere else, which is an alibi for, but which there has been no notice given.

Id. at p. 37.

In the motion for a new trial, the defendant provides an entirely different characterization of his defense. He says, "The issue in this case was whether the encounter between [the defendant] and Kevin Phillips happened as Phillips alleged." Dkt. No. 79 at 1. He states—in flat contradiction of the excerpts of his opening statement—that he "didn't argue that the encounter didn't happen." Id. He says that he wanted to introduce the timeline of the day of the encounter, "not to argue that he was somewhere else when the crime happened, but to argue that Phillips' account, which was laden with other inconsistencies, was not credible." Id. at 1-2.

Even if the defendant's characterization of his defense matches his words at trial—and the court does not believe that it does—his argument that he was not able to impeach the postal worker is without merit. He pointed out numerous discrepancies in the postal worker's testimony, including temporal discrepancies. The court told defense counsel that he could question the defendant's wife on what time he arrived and left. The jury was able to observe the postal worker's demeanor (which the court might characterize as surly; he admitted to the government that he did not want to be in court that day). The defendant had the opportunity to impeach Phillips, and it did so.

The defendant also argues that because it provided the Salvation Army timesheet in discovery and listed it on the exhibit list, the government could

13

not have been surprised that the defendant wanted to use it at trial. He argues that the purpose of Rule 12.1 is to avoid surprise at trial, but that allowing him to question Ms. Polnitz about the timesheet would not have constituted a surprise.

Even if the defendant is correct that there was no need for a formal notice of alibi, the court still would not have allowed the defendant to question *Ms. Polnitz* about the Salvation Army's timesheet. That document was a business record of the Salvation Army. Ms. Polnitz could not have testified about how it was created, or how accurate it was, or whether an employee could leave the Salvation Army without clocking out. The government would not have been able to cross-examine on the information in that timesheet, had the court allowed the defense to put it in through Ms. Polnitz.

    C.    <u>Ineffective Assistance of Counsel</u>

Given that conclusion, the defendant argues in the alternative that the court should find that defense counsel was ineffective under the Sixth Amendment because he did not see the timesheet and related testimony as alibi evidence, and asks the court to hold an evidentiary hearing (and appoint substitute counsel to conduct that hearing, given that current counsel likely would be a witness). Dkt. No. 79 at 7. Citing <u>Raygoz v. Hulick</u>, 474 F.3d 958, 964 (7th Cir. 2007) and <u>Jones v. Butler</u>, 778 F.3d 575, 584 (7th Cir. 2015), the defendant says that both (a) the failure to investigate and present a valid alibi defense; and (b) failure to comply with pretrial notice procedures for a valid

14

alibi defense have been found to constitute ineffective assistance of counsel. Id. at 8.

The government responds that the defendant's attorney did not provide ineffective assistance of counsel because any error resulting from his failure to notice the alibi defense did not prejudice the defendant. Dkt. No. 82 at 11. It stresses that the cases the defendant cites apply only where the defendant has a *viable* alibi defense. Id. at 12 (emphasis added). The government asserts that the defendant has not shown that admission of the timesheet, or testimony about it, would have created a reasonable probability of a different result. Id. The government argues that even if the timesheet, or testimony about it, had been admitted, its case against the defendant was strong; the government summarizes the record evidence that supported the jury's guilty verdict. Id. at 12-14.

For the defendant to prove that he received ineffective assistance of counsel, he must show (1) that his counsel was deficient, and (2) that the deficient performance prejudiced the defendant. Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish deficient performance, the defendant must show that counsel's performance failed to meet an objective standard of reasonableness. United States v. Best, 426 F.3d 937, 945 (7th Cir. 2005) (citing Strickland, 466 U.S. at 688)). "To establish prejudice, the defendant must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

probability is a probability sufficient to undermine confidence in the outcome.'" Id. (quoting Strickland, 466 U.S. at 694)).

The case the defendant cites, Raygoz v. Hulick, 474 F.3d 958, 964 (7th Cir. 2007), held that counsel's failure to investigate and present a viable alibi defense fell below an objective standard of reasonableness. The Seventh Circuit found that "the record shows that the lack of credible alibi witnesses was a significant, if not dispositive factor in both the original guilty verdict and the denial of the motion for new trial." Id. at 965.

That's not the case here. The timesheet was of marginal relevance to the defense. The defense theory appears to be that the timesheet would have impeached the postal worker's credibility about the timing of the events of June 27. Even at the time the defense offered the evidence, the court questioned its relevance. It commented:

> At sidebar, you indicated that all you were concerned with is somehow getting in what time Mr. Polnitz left his job that day. And aside from the evidentiary issues, I'm trying to figure out what the relevance of that is to your expressed defense that the event could not have happened.

Dkt. No. 77 at 35.

As the government points out, the defendant questioned the victim about his timeline. Dkt. No. 76 at 61, 70. He introduced evidence from Lorenzya Polnitz about what time the mail was delivered and what time her husband came home. Dkt. No. 77 at 31-33. He argued in closing argument that the postal worker's timeline of the events didn't make sense:

> Let's start with the timing of what happened. Mr. Phillips testified that he usually finishes his route at 3 o'clock in the

16

> afternoon, 3:00 p.m. He was certain, said several times on this day that he completed his route and this incident happened around 5:00 p.m. We know that's not true because the 911 call came in at 4:20 p.m. And on that call, Mr. Phillips said that it had happened ten minutes earlier, just ten minutes earlier. So we know he's wrong about the time.

Dkt. No. 77 at 75-76. The timesheet may have bolstered the evidence that the postal worker was wrong about the time, but its absence did not prevent the defendant from impeaching the postal worker on this point. The jury heard the defense theory that the victim did not present a coherent timeline.

Even if the court agreed that defense counsel's failure to notice this evidence as alibi evidence constituted deficient performance, it would not grant the motion for new trial on ineffective assistance of counsel grounds. The exclusion of the timesheet does not undermine the court's confidence in the outcome of the trial. The government presented substantial evidence inculpating the defendant. Dkt. No. 82 at 11-14. Regardless of the timing of the encounter, the postal worker provided detailed testimony that the defendant pointed a gun at him. Dkt. No. 76 at 53-55. The postal worker testified that on the day of the incident, he provided law enforcement with a detailed description of his attacker, id. at 49; Officer Wilkiwicz of the Milwaukee Police Department testified that when they went to the address provided by the postal worker, the person who came to the door—the defendant—matched that description, id. at 86. The postal worker testified that the defendant drove a white Dodge Caravan, id. at 48; Officer Wilkiewicz testified that he observed a white Dodge Caravan parked behind the defendant's house, id. at 85. The postal worker testified that the defendant pointed a black, .380-caliber pistol at him, id. at

54; Officer Marcel Stolz of the Milwaukee Police Department testified that law enforcement recovered a black, .380 pistol from the defendant's house, id. at 112. The postal worker testified that on the evening of the crime, he identified the defendant in a photo array. Id. at 57-59.

Counsel was not ineffective in failing to file a notice of alibi or failing to convince the court to admit the timesheet and allow Ms. Polnitz to testify about it. Even if counsel was ineffective, absence of the timesheet did not affect the outcome at trial.

The interests of justice do not warrant a new trial.

## IV. CONCLUSION

The court **DENIES** the defendant's motion for a new trial. Dkt. No. 79.

Dated in Milwaukee, Wisconsin this 17th day of April, 2019.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**United States District Judge**