UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

                Plaintiff,

                                        Case No. 17-cr-201-pp

   v.

DAVID E. POLNITZ, JR.,

                Defendant.

---

**ORDER GRANTING DEFENDANT'S MOTION FOR RECONSIDERATION (DKT. NO. 107) AND DECLINING TO VACATE ORDER DENYING MOTION FOR COMPASSIONATE RELEASE (DKT. NO. 106)**

---

As the court explained in its order denying the defendant's March 2, 2020 motion for compassionate release, the court sentenced the defendant to serve thirty-six months in custody after a jury convicted him of being a felon in possession of a firearm and assaulting and intimidating a postal carrier. Dkt. No. 106. The court denied the defendant's motion because it determined that he had not demonstrated "the kinds of extraordinary and compelling circumstances contemplated by the First Step Act." Id. at 4.

Two months later, the defendant filed this motion to reconsider. Dkt. No. 107. He first reminds the court that he is in custody at FCI Terminal Island in San Pedro, California. Id. at 1. The motion indicates that as of May 5, 2020, there were 620 inmates "with COVID-19" at the facility; he does not indicate whether those were confirmed positives or inmates who were ill. He reported that six inmates had died as of May 5, 2020. Id. As of the date of this order, the BOP reports that FCI Terminal Island has twenty-six active cases of COVID-19

1

among inmates and four among staff. https://www.bop.gov/coronavirus (last visited June 9, 2020).

The defendant argues that the outbreak at FCI Terminal Island "demonstrates that the BOP is failing to protect the people in its custody from COVID-19," and argues that "the needs of uninfected inmates have been put aside." Id. at 3.

The defendant discusses his history of mental health problems (exacerbated by the death of his son not quite a year ago, which the court recalls from his motion for a recommendation that the BOP allow the defendant to attend the funeral). Id. at 3. He asserts that the strain of watching his fellow inmates become infected—and die, in some cases—coupled with the fact that he was not allowed phone or email contact with his family has caused him to decompensate and that he is not receiving mental health services. Id. at 3-4. He asserts that a scheduled foot surgery was put on hold and that he has not received medical supplies he needs for his back and hip pain. Id. at 4. He points to research linking higher rates of death from infectious disease in people with severe mental disorders. Id. at 6. The defendant argues that this combination of circumstances—the conditions at FCI Terminal Island and his own mental and physical health conditions—put him in "grave danger" and make his stay in prison "dangerous and increasingly inhumane." Id.

The defendant also points to court cases and media reports indicating that the staff at FCI Terminal Island were not providing information about how it was caring for sick inmates or preventing virus spread, that it was not communicating with the families of infected and ill inmates until it was far too late, and that it was warehousing healthy inmates into facilities with sub-standard living conditions. Id. at 7-8.

The court also denied the defendant's March motion because he had not shown that he had exhausted his remedies as required by 18 U.S.C. §3582(c). Dkt. No. 106 at 3. In the May 5, 2020 motion, the defendant says he made his request of the warden "over three weeks ago," and thus that by the time the court rules, he will have exhausted his remedies. Dkt. No. 107 at 9. He also argues that there is case law supporting exceptions to the exhaustion requirement.[1] Id. at 9-10.

Finally, the defendant proposes in his release plan that he will live with his wife Lorenzya and their five children. Id. at 12. He proposes that his wife will drive to California with another family member to pick him up and bring him back to Milwaukee, where he will quarantine for fourteen days, while his wife continues to work. Id. He also proposes that he serve twelve months of home confinement at the end of his sentence; he asserts that between the time he already has served and that twelve months, he will have served approximately twenty-four months of his thirty-six-month sentence. Id.

The probation department reports that the defendant has been at FCI Terminal Island (where he self-reported) since May 30, 2019—just over twelve months. Dkt. No. 110 at 1. It confirms that FCI Terminal Island did restrict phone and email access for inmates, to prevent transmission by touching keyboards. Id. at 1-2. As of the date of probation's report—May 20, 2020—111 inmates and six staff had tested positive, eight inmates had died, and 575 inmates and ten staff had recovered from the virus. Id. at 2. Since April 9, 2020, the defendant had been tested three times; all three tests were negative. Id. Probation confirms that on April 7, 2020, the defendant asked the warden

_____

[1] The defendant asked the court to order the BOP to produce certain records; that portion of the order is now moot.

for compassionate release based on medical circumstances. Id. The warden denied that request on May 11, 2020, finding that the defendant was able to care for himself in custody despite his physical condition and that he was capable of reoffending. Id. The remainder of the probation office's detailed report recounts the medical treatment—both physical and psychological—that the defendant has received over the past year. Id. at 2-5.

In its response, the government first concludes that "[t]he defendant appears to have exhausted his administrative remedies."[2] Dkt. No. 112 at 7. The government maintains, however, that the defendant has not established extraordinary and compelling reasons to support a sentence reduction, and that the defendant poses a danger to the community. Id. at 8. The government asserts that the defendant does not have an underlying medical condition that places him at severe risk of greater illness if infected with COVID-19. Id. at 11. Noting that the defendant suffers from orthopedic pain, depression and schizophrenia—and conceding that some of these conditions likely are more acute due to the stress of COVID-19—the government contends that none of the defendant's health conditions are of the type that raise concerns for increased risk of severe COVID-19 illness. Id. The government also notes that the defendant's medical records show that he has received treatment while at Terminal Island. Id. at 11-12. The government acknowledges the defendant's mental health issues, and concedes that being prohibited from using the phone likely created particular stress for the defendant, but notes that that restriction now has been lifted. Id. at 13.

---

[2] The government attached the defendant's request to the warden, dated April 7, 2020 and marked "received" April 13, 2020. Dkt. No. 112-1. It also attached the warden's denial of the defendant's request, dated May 11, 2020. Dkt. No. 112-2.

4

As to the defendant's danger to the community, the government reminds the court that the defendant was a felon at the time he committed the offense of brandishing a gun at, and threatening, a postal worker. Id. at 14. It notes that the Bureau of Prisons' risk assessment tool—PATTERN—rates the defendant's likely of risk to offend as "medium." Id. at 15. The government opines that releasing the defendant after he has served just over a year of a three-year sentence "would be an affront to the victim in this case, who until now has been able to take comfort that the defendant received 'just punishment' for the offense." Id.

The court granted the defendant leave to file a reply brief. Dkt. No. 115. In that reply, the defendant states, for the first time in this case, that he has a "history of asthma." Dkt. No. 117 at 3. He also indicates that he has gained weight since being incarcerated, going from 195 pounds on June 3, 2019 to 223 pounds on March 5, 2020—a gain of almost thirty pounds resulting in a BMI of 30.2. Id. at 3. The defendant argues that both asthma and obesity are risk factors for severe illness and death to people infected with COVID-19. Id.

The defendant argues that his significant mental health issues provide an extraordinary and compelling reason for the sentence reduction. Id. at 6. He argues that he has received no health care since the COVID-19 outbreak. Id. at 7. He argues that FCI Terminal Island is incapable of protecting inmates, as demonstrated by the conditions there. Id. at 9.

As to whether he is a danger to the community, the defendant argues—as he has in prior filings—that he should not be faulted for having gone to trial, or for the strategies his counsel employed at trial. Id. at 10. He notes that he "ultimately did admit to his crime and apologized for it." Id. He points out that early in his case, Judge Duffin concluded that he did not pose an undue

5

danger to the community and allowed his release on bond. Id. at 11. In a particularly surprising turn, the defendant reveals that the victim postal carrier—who testified against the defendant at trial—now wants the court to release the defendant. Id. at 11-12. He says that this is because the postal carrier now "knows that [the defendant] is in a prison being decimated by COVID-19." Id. at 12. He attaches a statement from the postal carrier, Kevin Phillips, dated May 23, 2020. Dkt. No. 117-1. In this statement, Phillips says that he did not want the defendant to go to jail, that he never wanted the defendant to go to jail, and that "[i]t was handled poorly." Id. Phillips says that "[i]t was a light crime, he shouldn't have no jail time," and that the defendant "should have had detention center for three months, then he should be gone." Id. He says he bears the defendant no ill-will, that he himself has suffered from COVID (his father contracted it and recovered, and he lost several family members to the disease) and that he does not want the defendant to "suffer for a whole year." Id.

The defendant argues that because he is slated for release in June 2021, his proposal amounts to converting the second year of his sentence to home confinement. Dkt. No. 117 at 12-13. He argues that another year of prison—with disrupted programming, quarantine and health risks—will accomplish nothing. Id. at 13. He says the only reason to keep him in prison another year is for punishment, and that while that is important, it can be accomplished without the defendant "rotting away in a rodent or bat infested factory or warehouse." Id. While the defendant agrees that this court "struck a careful balance" of the sentencing factors when it imposed the thirty-six-month sentence, "the reality is that the balance has shifted." Id.

6

In its March 9, 2020 order denying the defendant's compassionate release motion, the court noted that the defendant had a guidelines offense level of 24 and a criminal history category of II, which resulted in an advisory guidelines sentence of 57 to 71 months. Dkt. No. 106 at 1. The government asked for a sentence of 66 months. Id. The court imposed a sentence of *36* months—two and a half years less than what the government recommended, and just over two years below the low end of the guideline range. Id. The defendant is now asking the court to reduce that sentence to a sentence of about thirteen months, arguing that he has health conditions (asthma and obesity) which put him at higher risk for severe illness if infected by COVID-19, that his mental health issues are extraordinary and compelling circumstances, that the conditions at Terminal Island are extraordinary and compelling circumstances, that he is not a danger to the community and that his victim wants him released.

As to the defendant's health, the court acknowledged at sentencing and in its March 9, 2020 order the defendant's orthopedic and mental health issues. The court already has found that, while those issue are real and a heavy burden for the defendant, they are not the type of medical conditions that the CDC and other authorities indicate put one at increased risk for more severe illness if infected with COVID. As for asthma, the court notes that the defendant did not mention any history of asthma in the January 24, 2018 study (dkt. no. 2), the presentence investigation report (dkt. no. 86 at ¶¶60-65) or his original motion for compassionate release (dkt. no. 105). The first and only mention of asthma in the record is a Final Report from radiologist Farhad Khorashadi, MD at FCI Terminal Island dated June 10, 2019; it appears to be a report of the results of a chest x-ray (normal). Dkt. No. 112-3 at 119. Next to

7

"history," the report states "Hx asthma;" next to "Indication," the report states "History of asthma." Id.

The CDC states that "[p]eople with moderate to severe asthma may be at higher risk of getting very sick from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html. The American Academy of Allergy Asthma & Immunology states that "currently there is no evidence of increased infection rates in those with asthma," and that "although the Centers for Disease Control and Prevention states that patients with moderate-severe asthma could be at greater risk for more severe disease, there is no published data to support this determination at this time." https://www.aaaai.org/conditions-and-treatments/library/asthma-library/covid-asthma.

Even if moderate to severe asthma may put one at higher risk for severe illness if infected—and there appears to be controversy about that in the scientific community—the court does not have enough information about the defendant's history of asthma to consider this an extraordinary and compelling reason for granting his motion. A single document in all the medical records mentions a history of asthma—a history the defendant did not mention in any of his interviews with court personnel—and there is no indication of whether the asthma is mild, moderate or severe, whether the defendant has needed an inhaler to treat it, whether he ever has been hospitalized for it.

The defendant reports that he has gained weight while in custody and now is obese, with a BMI of 30. The CDC indicates that "[s]evere obesity, defined as a body mass index (BMI) of 40 or above, puts people at higher risk for complications from COVID-19." https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html. Johns Hopkins

8

University discusses the higher risks of COVID-19 to people with "substantial obesity—say a BMI over 35." https://hub.jhu.edu/2020/06/01/david-kass-obesity-covid-19/. The defendant does not appear to fall into these severe categories.

The defendant had discussed the impact that being cut off from the outside world—no telephone or email access—was having on his depression and related mental health issues. The court has no reason to doubt that that isolation exacerbated the defendant's symptoms. But it appears that those issued now have been resolved at FCI Terminal Island.

The defendant's concerns about Terminal Island itself—the numbers of infected persons (inmates and staff), the number of deaths and the media-reported conditions of some alternative living locations—are reasons for concern. Prisons have become hotspots for the virus, as many predicted they would. There have been even larger numbers of confirmed cases at the Butner, North Carolina correctional complex, https://carolinapublicpress.org/30543/lawsuit-seeks-release-of-nc-federal-prisoners-with-covid-19-risk-factors, and at FCI Elkton in Ohio, https://www.fox19.com/2020/06/10/no-new-covid-cases-ohio-federal-prison/. As of the writing of this order, however, the BOP reports only sixteen active cases among inmates at Terminal Island and four active cases among staff. https://www.bop.gov/coronavirus. It appears that the Terminal Island facility is making efforts to manage the outbreak there.

The defendant has argued that he is getting no medical care during the pandemic. The medical records indicate that the defendant had counseling and mental health treatment on March 5, 2020 and that he was tested for the virus on April 24, 2020 and May 4, 2020. Dkt. No. 112-3 at 1-11. His foot surgery

has been postponed, but doctors outside of prisons are postponing non-emergency procedures, too.

The government's argument that the court should not grant the motion because the victim—mail carrier Kevin Phillips—had the comfort of knowing the defendant was incarcerated prompted defense counsel to have an investigator visit Mr. Phillips. Mr. Phillips told that investigator that he never wanted the defendant to go to jail and that the court should release him now. Mr. Phillips testified at the trial that the defendant threatened him and pointed a gun at him. He apparently made no statement to the presentence writer—there is no victim impact statement in the PSR—and he did not appear at sentencing to make a statement. While Mr. Phillips now says that he never wanted the defendant to go to prison and that "it"—presumably the case—was handled badly, he never expressed those views at the time of the events. Regardless, Mr. Phillips's opinion does not mean that the defendant's offense was not a serious one.

It is true that Judge Duffin allowed the defendant to be released on bond. Indeed, this court allowed the defendant to self-surrender, even though he was convicted at trial of assaulting a postal carrier and being a felon in possession of a firearm. And this court imposed a sentence well below the low end of the guidelines and the government's recommendation. The court also recommended furlough for the defendant to attend his son's funeral (although it understands from counsel that the BOP did not grant that request).

But the defendant came home from work, went into his house and got a gun that he was prohibited from possessing, went up to the postal carrier, threatened him and pointed the gun at him—all because the postal carrier used dog spray on his dog. Then, when the police arrived to investigate, the

defendant was untruthful, telling them that he had had a water gun earlier. The defendant is absolutely right that the fact that he chose to go to trial, or that his lawyer made certain arguments at that trial, is not relevant to his punishment. But his actions are relevant, and the court imposed the sentence that it believed was sufficient but not greater than necessary to address punishment and deterrence. The defendant will not serve thirty-six months in custody—the court was aware of that when it imposed the sentence, and the defendant is aware of that now. But he asks the court to reduce his sentence to one-third of the original sentence, without a showing that he has severe asthma or obesity or that he is a higher risk than others for severe illness if he becomes infected.

The court has reconsidered its order, as the defendant asked it to do. It will not vacate that order at this time.

The court **GRANTS** the defendant's motion for reconsideration. Dkt. No. 107.

The court **DECLINES** to vacate its order denying the defendant's motion for compassionate release. Dkt. No. 106.

Dated in Milwaukee, Wisconsin this 12th day of June, 2020.

**BY THE COURT:**

_____

**HON. PAMELA PEPPER**
**Chief United States District Judge**